UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

SHOSHANA MINZER,

          Plaintiff,

       v.

PDC ENERGY, INC., BARTON R.
BROOKMAN, PAMELA R. BUTCHER,
MARK E. ELLIS, PAUL J. KORUS, LYNN A.
PETERSON, CARLOS A. SABATER, and
DIANA L. SANDS,

          Defendants.

-------------------------------------------------------------

Case No. _____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Shoshana Minzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This action is brought by Plaintiff against PDC Energy, Inc. ("PDC" or the "Company") and the members of PDC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which PDC will be acquired by Chevron Corporation ("Chevron") through Chevron's subsidiary Bronco Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On May 22, 2023, PDC and Chevron issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated May 21, 2023, to sell PDC to Chevron (the "Merger Agreement").  Under the terms of the Merger Agreement, PDC shareholders will receive 0.4638 shares of Chevron common stock for each share of PDC common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $7.6 billion, including debt.

3.      On July 7, 2023, PDC filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that PDC stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) PDC's financial projections, relied upon by the Company's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; and (iii) the Company's other financial advisor, PJT Partners LP's ("PJT Partners") potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as PDC stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, PDC's public stockholders will be forced to make a voting on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, PDC's common stock trades on The Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of PDC.

9.      Defendant PDC is a Delaware corporation, with its principal executive offices located at 1775 Sherman Street, Suite 3000, Denver, Colorado 80203.  PDC, an independent exploration and production company, acquires, explores for, develops, and produces crude oil, natural gas, and natural gas liquids in the United States.  PDC's shares trade on The Nasdaq Global Select Market under the ticker symbol "PDCE."

10.     Defendant Barton Brookman ("Brookman") has been President of the Company since June 2014 and Chief Executive Officer ("CEO") and a director since January 2015.

11.     Defendant Pamela R. Butcher ("Butcher") has been a director of the Company since February 2022.

12.     Defendant Mark E. Ellis ("Ellis") has been Non-Executive Chairman of the Board since February 2020 and a director of the Company since August 2017.

13.     Defendant Paul J. Korus ("Korus") has been a director of the Company since January 2020.

14.     Defendant Lynn A. Peterson ("Peterson") has been a director of the Company since January 2020.

15.     Defendant Carlos A. Sabater ("Sabater") has been a director of the Company since May 2021.

16.     Defendant Diana Sands ("Sands") has been a director of the Company since February 2021.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     Chevron is a global energy company with substantial business activities in the following countries: Angola, Argentina, Australia, Bangladesh, Brazil, Canada, China, Egypt, Equatorial Guinea, Israel, Kazakhstan, Mexico, Nigeria, the Partitioned Zone between Saudi Arabia and Kuwait, the Philippines, Republic of Congo, Singapore, South Korea, Thailand, the United Kingdom, the United States, and Venezuela.

19.     Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of Chevron.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     PDC is a domestic independent exploration and production company that acquires, explores, and develops properties for the production of crude oil, natural gas and NGLs, with operations in the Wattenberg Field in Colorado and the Delaware Basin in west Texas.  PDC's operations in the Wattenberg Field are focused on the horizontal Niobrara and Codell plays, and its Delaware Basin operations are primarily focused in the Wolfcamp zones.

21.     On May 4, 2023, the Company announced its first quarter 2023 financial results and business developments.  Net income for the first quarter of 2023 was $414 million, or $4.64 per diluted share, compared to $350 million, or $3.79 per diluted share, in the fourth quarter of 2022, and a net loss of $32.0 million in the first quarter of 2022.  Net cash from operating activities during the quarter was $588.3 million, compared to $489.0 million, in the first quarter of 2022.  Reflecting on the results, defendant Brookman stated:

> Our first quarter operations established a solid foundation for executing on our full-year 2023 plan and marked our most operationally intensive quarter for the year, with four rigs running and three completion crews across our asset base.   We began to see the production response from this activity level at the end of the first quarter when total production for March averaged 253,000 Boe per day, and oil production averaged 81,000 Bbls per day.  Production continues to ramp up into the second quarter as new wells come online.

> PDC remains focused on driving value through innovation and technology across all our operations.  Great examples include our use of local sand in the Wattenberg to reduce well costs, the execution of 3-mile laterals in both basins, and our ongoing completion optimization efforts.  These innovations along with our lower per-well cost structure will continue to improve the overall capital efficiency for the company.

> As we report earnings today with production at record levels, I want to recognize an important milestone for our Company.  Our DJ Basin operations have now exceeded 5 years with no lost time injuries and our Delaware team remains on track to achieve the same impressive milestone in the next month.

22.     On May 24, 2023, the Company announced that its Board of Directors declared a quarterly cash dividend of $0.40 per share on PDC's outstanding common stock, payable on June 22, 2023, to stockholders of record at the close of business on June 8, 2023.

**The Proposed Transaction**

23.     On May 22, 2023, PDC and Chevron issued a press release announcing the Proposed Transaction, which states, in relevant part:

> SAN RAMON, Calif. and DENVER, Colo.--(BUSINESS WIRE)--May 22, 2023-
> - Chevron Corporation (NYSE: CVX) announced today that it has entered into a definitive agreement with PDC Energy, Inc. (NASDAQ: PDCE) to acquire all of the outstanding shares of PDC in an all-stock transaction valued at $6.3 billion, or $72 per share.  Based on Chevron's closing price on May 19, 2023 and under the terms of the agreement, PDC shareholders will receive 0.4638 shares of Chevron for each PDC share.  The total enterprise value, including debt, of the transaction is $7.6 billion.
>
> The acquisition of PDC provides Chevron with high-quality assets expected to deliver higher returns in lower carbon intensity basins in the United States.  PDC brings strong free cash flow, low breakeven production and development opportunities adjacent to Chevron's position in the Denver-Julesburg (DJ) Basin, as well as additional acreage to Chevron's leading position in the Permian Basin.
>
> "PDC's attractive and complementary assets strengthen Chevron's position in key U.S. production basins," said Chevron Chairman and CEO Mike Wirth.  "This transaction is accretive to all important financial measures and enhances Chevron's objective to safely deliver higher returns and lower carbon.  We look forward to welcoming PDC's team and shareholders to Chevron and continuing both companies' focus on safe and reliable operations."
>
> "The combination with Chevron is a great opportunity for PDC to maximize value for our shareholders.  It provides a global portfolio of best-in-class assets," said Bart Brookman, PDC President and CEO.  "I look forward to blending our highly complementary organizations, and I'm excited that PDC's assets will help propel Chevron toward our shared goal for a lower carbon energy future."
>
> **Transaction Benefits**
>
> - **Accretive to earnings per share, free cash flow and ROCE:** Chevron anticipates the transaction to be accretive to all key financial measures within the first year after closing and to add about $1 billion in annual free cash flow at $70 per barrel

Brent and $3.50 per Mcf Henry Hub (approximate 2024 futures prices as of May 2023).

- **Strong strategic fit:** Increases Chevron's proved reserves by 10% at an acquisition cost under $7 per barrel of oil equivalent (BOE).
  - o DJ Basin – 275,000 net acres adjacent to Chevron's existing operations that add over 1 billion BOE of proved reserves in highly economic locations and enable capital and operational synergies.
  - o Permian Basin – 25,000 net acres that are held by production and will be integrated into Chevron's existing capital efficient development operations.

- **Capital and cost efficient:**
  - o Capital expenditures – Chevron expects to increase capex by ~$1 billion per year, raising its guidance range to $14 to $16 billion through 2027, after realizing about $400 million in capex efficiencies post-closing.
  - o Operational expenditures – the transaction is expected to achieve run-rate cost synergies of around $100 million before tax within a year of closing.

**Transaction Details**

The acquisition consideration is structured with 100 percent stock utilizing Chevron's equity.  In aggregate, upon closing of the transaction, Chevron will issue approximately 41 million shares of common stock.  Total enterprise value of $7.6 billion includes net debt.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close by year-end 2023.  The acquisition is subject to PDC shareholder approval.  It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of 14% on a 10-day average based on closing stock prices on May 19, 2023.

**Advisors**

Morgan Stanley & Co. LLC is acting as lead financial advisor to Chevron. Evercore also advised Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron.  J.P. Morgan Securities LLC is acting as lead financial advisor to PDC Energy and provided a fairness opinion to the Board of Directors.  Wachtell, Lipton, Rosen & Katz and Davis Graham & Stubbs are jointly serving as the Company's legal counsel.  PJT Partners also advised PDC Energy.

**Insiders' Interests in the Proposed Transaction**

24.     PDC insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of PDC.

25.     Notably, if they are terminated in connection with the Proposed Transaction, PDC's named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity Awards ($)(2) | Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Barton R. Brookman | $6,637,500 | $39,419,150 | $   50,319 | $46,106,969 |
| R. Scott Meyers | $2,728,500 | $14,440,053 | $   87,723 | $17,256,276 |
| Lance A. Lauck | $3,604,350 | $13,852,748 | $   56,101 | $17,513,199 |
| Nicole L. Martinet | $2,278,500 | $  9,611,428 | $   87,723 | $11,977,651 |
| David J. Lillo | $2,205,000 | $  8,993,111 | $   87,723 | $11,285,834 |

**The Proxy Statement Contains Material Misstatements and Omissions**

26.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) PDC's financial projections relied upon by J.P. Morgan for its financial analyses; (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor J.P. Morgan; and (iii) PJT Partners' potential conflicts of interest.  Accordingly, PDC stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning PDC's Financial Projections*

27.     The Proxy Statement omits material information with respect to PDC's financial projections relied upon by J.P. Morgan for its financial analyses.

28.     For example, the Proxy Statement fails to disclose the unlevered free cash flows that PDC was forecasted to generate during fiscal years 2023 through 2031 based upon each of the

Management Outlook + LT $55 Flat Case, the Management Outlook + LT $70 Flat Case and the Strip Case financial projections.

29.     The omission of this information renders the statements in the "PDC Unaudited Prospective Financial Information" and "Opinion of J.P. Morgan Securities LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

30.     The Proxy Statement also describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, PDC's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to PDC's stockholders.

31.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flows that PDC was forecasted to generate during fiscal years 2023 through 2031 based upon each of the Management Outlook + LT $55 Flat Case, the Management Outlook + LT $70 Flat Case and the Strip Case financial projections; (ii) the inputs and assumptions underlying the discount rates used in the analysis; and (iii) the implied equity value per share ranges based on each of the Management Outlook + LT $55 Flat Case, the Management Outlook + LT $70 Flat Case and the Strip Case.

32.    The omission of this information renders the statements in the "Opinion of J.P. Morgan Securities LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJT Partners' Potential Conflicts of Interest***

33.    The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by one of the Company's financial advisors, PJT Partners.

34.    The Proxy Statement fails to disclose the specific financial advisory services that PJT partners provided to PDC in connection with the proposed Transaction and the fees to be received by PJT Partners for these services.

35.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

36.    The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

37.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of PDC will be unable to make a sufficiently informed voting in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

38.     Plaintiff repeats all previous allegations as if set forth in full.

39.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about (i) PDC's financial projections; (ii) the inputs and assumptions underlying J.P. Morgan's financial analyses; and (iii) PJT Partners' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

42.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

43.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     The Individual Defendants acted as controlling persons of PDC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PDC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, PDC stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of PDC, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to PDC stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  July 27, 2023

**WEISS LAW**

By:     */s/ Michael Rogovin*
<u>                              </u>
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**MCKAY LAW**
Michael McKay
5635 N. Scottsdale Road
Suite 170
Scottsdale, AZ 85250
Tel: (480) 681-7000
Fax: (480) 348-3999
Email: mmckay@mckaylaw.us

*Attorneys for Plaintiff*